UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-179-SDJ |
| | § | |
| MARK ANTHONY LOPEZ (21) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Government's Appeal of United States Magistrate Court's Order of Release, (Dkt. #141), in which the Government seeks revocation of the magistrate judge's order releasing Defendant Mark Anthony Lopez pending trial. The Court held a hearing on December 18, 2020. (Dkt. #245). The Court, having considered the Government's motion, the record, the arguments presented at the hearing, and the applicable law, **DENIES** the Government's motion.

### I. BACKGROUND

Lopez, along with twenty other codefendants, was indicted by a grand jury on August 12, 2020, on one count of conspiracy to possess with the intent to distribute and distribution of methamphetamine, cocaine, heroin, and marijuana in violation of 21 U.S.C. §§ 841, 846. These charges stem from Lopez's alleged role in an international drug-distribution network.

Following his arrest in the Western District of Texas, Lopez appeared before a magistrate judge for a pretrial detention hearing. The magistrate judge ultimately ordered Lopez released on a $100,000 bond with a five-percent cash or corporate surety and subject to several conditions of release.

The Government then filed with this Court an emergency motion for stay and appeal of the magistrate court's order of release, seeking to revoke the order and require Lopez to remain detained pending trial. (Dkt. #141). The Court granted the Government's stay motion and held a hearing on the matter of pretrial detention. At the hearing, the Government presented the testimony of Drug Enforcement Administration ("DEA") Agent Samuel Wasmund on matters involving the charge against Lopez, his potential flight risk, and his potential danger to the community if released. Lopez's attorney cross-examined Agent Wasmund and also presented the testimony of Alma Lopez, Amy Lopez, and Jerry Garza.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3145(a)(1), when a defendant is ordered released by a magistrate judge, the Government may file with the district court a motion for revocation of the release order. The district court reviews a motion to revoke a detention order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). Accordingly, the Court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judicial officer may order a defendant detained pending trial upon a finding that the Government has shown by a preponderance of the

2

evidence that "no condition or combination of conditions will reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see also Rueben*, 974 F.2d at 586 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required.").

Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F.App'x 594, 595 (5th Cir. 2019) (per curiam).

In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). The rebuttable presumption arises upon a finding of probable cause to believe that the defendant committed an offense subject to a maximum term of imprisonment of ten years or

more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 18 U.S.C. § 3142(e)(3)(A); *see also Rueben*, 974 F.2d at 586. Probable cause exists when offenses under the Controlled Substances Act are charged in an indictment. *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987).

Section 3142(e)'s rebuttable presumption "shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion," which remains with the Government. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251; *see also Hare*, 873 F.2d at 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."). If the defendant does not present evidence sufficient to rebut the presumption, the Court must still review the Section 3142(g) factors. *See United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988) (noting that the language of Section 3142(g) "*mandates* district court review of certain factors" (emphasis added)). As the Fifth Circuit has explained, the statute thus creates "an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Hare*, 873 F.2d at 799.

### III. DISCUSSION

In its appeal of the magistrate judge's order of release, the Government asserts that Lopez has not rebutted the presumption that he is a flight risk and a danger to

the community and that, even if he did rebut the presumption, the Section 3142(g) factors still weigh in favor of detention. To decide the motion, the Court must first determine whether Lopez is presumed to be a flight risk and a danger to the public and, if so, whether he has presented evidence sufficient to rebut those presumptions.

**A. Section 3142(e)'s rebuttable presumption applies and has been rebutted.**

The rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community applies in this case. Lopez has been indicted for alleged violations of 21 U.S.C. §§ 846 and 841(a)(1). Under the Controlled Substances Act, Lopez faces imprisonment of not less than ten years and not more than life imprisonment and a mandatory minimum of five years of supervised release. *See* 21 U.S.C. §§ 841(b)(1)(A), 846.

The indictment provides probable cause to believe that Lopez committed the charged offense. *See Trosper*, 809 F.2d at 1110 ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Further, the testimony of Agent Wasmund supports the finding of probable cause. *See Fortna*, 769 F.2d at 252 (finding probable cause while relying in part on the affidavit of an investigating agent). Therefore, under 18 U.S.C. § 3142(e)(3)(A), the presumption applies, and Lopez was required to produce rebutting evidence.

To rebut the presumption, however, Lopez bears "only the burden of producing rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798. Lopez has

5

produced evidence sufficient to rebut both the presumption that no combination of conditions will reasonably assure his appearance and that no combination of conditions will reasonably assure the public safety.

### 1. Appearance at trial and risk of flight

The evidence submitted shows that Lopez lived in San Antonio, Texas, at the time of his arrest. Lopez had been living in San Antonio for at least two years since beginning work with JPMorgan Chase. Prior to living in San Antonio, Lopez lived in Laredo, Texas, where he grew up and where his family still lives. Lopez is a citizen of the United States. Lopez's sister, Amy Lopez, and Lopez's friend, Jerry Garza, testified that they would be willing to act as custodians and ensure that Lopez complies with any release conditions and appears for future proceedings in this case. Lopez's sister, Alma Lopez, further testified that she would also assist in ensuring that Lopez complies with any conditions of release and appears for further proceedings.

This evidence is sufficient to satisfy Lopez's burden of production to rebut the presumption that Lopez presents a substantial flight risk. The presumption that no combination of conditions can reasonably assure Lopez's appearance at trial has been rebutted but remains a factor to be considered in the Court's analysis. *See Fortna*, 769 F.2d at 251.

### 2. Danger to the public

The presumption that Lopez is a danger to the public also has been rebutted. Lopez presented evidence that he has no prior convictions and that he has been

gainfully employed for over two years. Lopez also established that the Government's only evidence of Lopez's involvement in drug trafficking regards an incident in 2017—more than three years ago. Further, Lopez offered the testimony of two people close to him, Amy Lopez and Jerry Garza, willing to act as custodians of Lopez should he be released. This evidence is sufficient to meet Lopez's burden of production to rebut the presumption that Lopez is a danger to the public. The presumption, however, remains a factor to be considered in the Court's analysis of the danger Lopez presents to the safety of the public. *See Fortna*, 769 F.2d 251.

### B. Application of the Section 3142(g) factors confirms that Lopez should be released pending trial.

Having determined that the presumption applies and that Lopez produced evidence sufficient to rebut the presumption as to both his appearance at trial and to the public safety, the Court must now consider the Section 3142(g) factors to answer the ultimate question of whether the Government met its burden of proof. The Court finds that, having reviewed the Section 3142(g) factors, the Government failed to prove by a preponderance of the evidence that no combination of release conditions could reasonably assure Lopez's appearance at trial and further failed to prove by clear and convincing evidence that no such conditions could reasonably assure the safety of the public pending trial. For these reasons, Lopez should be released pending trial.

#### 1. Nature and circumstances of the charged offense

Lopez is charged with a serious offense—conspiracy to possess with the intent to distribute and distribution of methamphetamine, cocaine, heroin, and marijuana.

Each of these drugs is classified as either schedule I or schedule II—drugs the DEA has determined have a high potential for abuse. *See* 21 U.S.C. § 812(b). If convicted, Lopez faces a minimum of ten years and a maximum of life in prison. *See* 21 U.S.C. §§ 841(b)(1)(A), 846. The severity of Lopez's potential sentence underscores the seriousness of Lopez's charged offense. *See United States v. Almasri*, No. H-07-155, 2007 WL 2964780, at *1 (S.D. Tex. Oct. 10, 2007) (concluding that a defendant's potential sentence weighed in favor of detention when the defendant faced a *maximum* sentence of ten years).

Lopez's alleged involvement with an international drug-trafficking organization is a serious charge regardless of his role in the organization. However, the Government's attempt to establish that Lopez is a significant leader in the alleged criminal organization, and therefore an even more serious offender, ultimately fell short. Agent Wasmund testified that Kevin Alvarez, Lopez's codefendant, was arrested during a transport of three kilograms of cocaine in 2017 and that Alvarez identified Lopez as the individual coordinating the transport. Alvarez informed Agent Wasmund that Alvarez had met Lopez at a gas station before loading the cocaine in the vehicle, which Agent Wasmund was able to verify with surveillance footage from the gas station. Agent Wasmund also recovered text messages from Alvarez's phone, in which Alvarez had been updating somebody regularly regarding the status of the cocaine transport, and Alvarez identified Lopez as the recipient of those text messages.

This evidence is insufficient to establish that Lopez poses an increased risk of flight or danger to the community beyond the risk already established by the seriousness of the crime with which Lopez is charged. The Government maintains that Lopez is a significant leader within the drug-trafficking organization but only points to the statements of a single coconspirator regarding a single drug transport. Yet, according to the Government, the conspiracy of which Lopez is allegedly a member is a large, international drug-trafficking organization of which over sixty members have been charged over two indictments. The Government has been investigating the organization for years, with Lopez first coming onto the Government's radar in 2017. Agent Wasmund testified that this has been a complex investigation with many resources devoted to it—including Title III intercepts, geolocation orders, vehicle tracking, video surveillance, in-person surveillance, and cooperating witnesses. Despite this, the only evidence the Government indicated it has that Lopez is a significant leader in the organization are the statements of a single codefendant regarding Lopez's involvement in a single cocaine transport. Without more, this is insufficient to establish that Lopez's role in the organization establishes that Lopez is a special risk of flight or danger to the community.

Despite the Government's failure to establish that Lopez is a significant leader in the organization, Lopez's charges are still serious and weigh somewhat in favor of detention. *See Hare*, 873 F.2d 796, 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society.").

### 2. Weight of the evidence

The Court must also consider the weight of the evidence against Lopez, although this factor is considered "to be of least importance in the detention determination." *United States v. Stanford*, 630 F.Supp.2d 751, 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F.Supp. 385, 393 (W.D. La. 1997)).

The Government produced strong evidence against Lopez. As explained above, a codefendant identified Lopez as participating in the transportation of cocaine on behalf of the conspiracy, and the coconspirator's story was corroborated by video surveillance footage. Agent Wasmund also recovered text messages regarding the coordination of drug-trafficking activities, and a codefendant identified Lopez as the recipient of those messages. Agent Wasmund further testified that Lopez was once found at a traffic stop in possession of five to six cell phones—an attribute that Agent Wasmund testified is uniquely common to drug dealers. The strength of the Government's evidence of Lopez's participation in a serious crime also weighs in favor of detention, though it is the least important factor.

### 3. History and characteristics of the defendant

However, the Government failed to prove that Lopez's personal history and characteristics establish that no combination of conditions will reasonably assure Lopez's appearance at future proceedings and the safety of the community. Recognizing that Lopez has no prior convictions, the Government has focused on Lopez's arrest history. Lopez has five previous arrests, four of which occurred over

10

ten years ago while Lopez was a juvenile. The other occurred just over four years ago when Lopez was twenty-three years old. Only one of Lopez's juvenile arrests actually resulted in an adjudication, and Lopez's only adult charge, a misdemeanor family-violence charge, was dismissed without a conviction. That Lopez was arrested over ten years ago at ages eleven, thirteen, and sixteen with only one arrest resulting in a juvenile adjudication does not indicate that Lopez is a substantial flight risk or danger to the community. Nor does a single arrest as an adult that never resulted in a conviction indicate that Lopez is a substantial flight risk or danger to the community.

The Government also offers Lopez's frequent travel to Mexico in recent years, and Lopez's apparent dishonesty in his pretrial-services interview about the frequency of his travel to Mexico, as evidence that Lopez is a substantial flight risk. Lopez crossed the border into Mexico roughly thirty-three times in the last four years, though he only crossed once in the last year. The pretrial-services report states that Lopez represented to U.S. Probation that he travels to Mexico approximately once a year. The Government argues that Lopez's frequent travel to Mexico, and his apparent attempt to withhold that information, suggest that Lopez is likely to flee to Mexico if released.

The Court agrees with the Government that any effort to conceal prior to a pretrial detention hearing how often one travels to Mexico raises red flags. However, based on the pretrial-services report, the Court cannot determine exactly what Lopez told the U.S. Probation Officer. The pretrial-services report contains a written

11

summary by the U.S. Probation Officer of the information the officer learned by interviewing Lopez. The summary simply states that Lopez "indicated he travels to Mexico once a year." Based solely on this summary statement, the Court is unable to determine the specifics of the exchange between Lopez and the U.S. Probation Officer. It is undisputed that the statement that Lopez travels to Mexico once a year is accurate with regard to this year—Lopez has only traveled to Mexico once this year. It is possible that Lopez was dishonest about the frequency of his travel to Mexico, but it is equally possible that Lopez understood the U.S. Probation Officer to be asking how often Lopez has traveled to Mexico in the last year or that the officer misinterpreted Lopez's statement that he has traveled to Mexico once this year as an indication that Lopez travels to Mexico once a year.[1] An ambiguous statement contained in a written summary of a pretrial-services interview does not establish that Lopez is a substantial flight risk.

Nor does Lopez's Mexico travel itself rise to the level of establishing that Lopez is a substantial flight risk. The Government offered no evidence of Lopez's activities in Mexico nor did the Government offer any evidence that Lopez has any family or other significant relationships with people in Mexico. Lopez and his family are from Laredo, Texas, a city that shares a border with Mexico. Lopez's sisters testified that, historically, it is not uncommon for them or Lopez to travel to Nuevo Laredo, Mexico,

---

[1] Further supporting the possibility that the statement in the pretrial-services report reflects a miscommunication rather than dishonesty on Lopez's part, the Court notes that Lopez was forthright with U.S. Probation about his illicit marijuana use. Lopez's candor concerning his use of an illegal drug suggests that it is unlikely that he otherwise deliberately provided inaccurate information to pretrial services.

12

to buy food, groceries, or medicine. Without more evidence regarding Lopez's activities and connections in Mexico, his past travel to Mexico by itself does not establish that no combination of conditions will reasonably assure Lopez's appearance at future proceedings.

Furthermore, Lopez has maintained steady employment with JPMorgan Chase for the two years prior to his arrest. He was dependable enough to not only maintain employment, but also be promoted, and the company was willing to allow him to continue his employment had he been released following the hearing before the magistrate judge. Evidence presented at the hearing also established that Lopez has employment available to him should this Court order him released. Lopez's prior steady employment, as well as his ability to maintain steady employment on release, weigh in favor of release.

The Government failed to produce sufficient evidence that Lopez's history and characteristics establish that no combination of conditions will reasonably assure Lopez's appearance at trial and the safety of the public.

### 4. Nature and seriousness of the danger posed by the defendant

The allegations and evidence against Lopez are serious, and drug dealing poses a significant danger to the community. *See Hare*, 873 F.2d at 798–99. However, the Government presented no evidence of the danger Lopez poses beyond the nature of the charged offense and the strength of the Government's evidence of guilt. Lopez has never been convicted of a crime, and the Government failed to produce sufficient evidence establishing that Lopez is a significant leader within this drug-trafficking

conspiracy. The Government also does not allege that Lopez has committed any acts of violence in connection with the alleged drug conspiracy. Lopez has maintained steady employment in the community and has offered a reasonable release plan. Lopez's sister, Amy Lopez, offered to serve as Lopez's custodian, and his other sister, Alma Lopez, offered to assist in ensuring Lopez's appearance at future proceedings and the safety of the public. Ultimately, the Government failed to establish that Lopez presents a special danger to society beyond the danger posed by all alleged participants in drug-trafficking conspiracies.

*   *   *

In sum, while the nature of the charged offense and the strength of the Government's evidence of Lopez's guilt weigh somewhat in favor of detention, all other factors weigh in favor of release. Lopez has been charged with a serious offense, and the evidence the Government has against Lopez is strong. However, without more, the seriousness of the charge alone combined with the strength of the evidence does not meet the Government's burden of proving that no combination of conditions will reasonably assure the safety of the public or Lopez's appearance at future proceedings. *See United States v. Cirksena*, 749 F.App'x 488, 491 (8th Cir. 2019) (holding that, though the defendant's drug-trafficking and firearms charges were serious, "[t]he mere charged offenses, alone, are not enough to require pretrial detention."). Therefore, the Government's motion must be DENIED.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED** that the Government's Appeal of United States Magistrate Court's Order of Release, (Dkt. #141), is **DENIED**. A hearing before United States Magistrate Judge Christine Nowak on appropriate release conditions will be set by separate order. Defendant Mark Anthony Lopez shall remain in custody pending the hearing on conditions of release.

**So ORDERED and SIGNED this 5th day of January, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE